OF THE

# SUPREME COURT OF APPEALS

# OF WEST VIRGINIA.

## SPRING-SPECIAL TERM, 1898.

### CHARLESTON.

GEORGE *et al. v.* CURTIS *et al.*

Submitted February 2, 1898—Decided April 16, 1898.

EQUITY—*Parties in Pari Delicto—Sheriff.*

When a sheriff commits a default, and the sureties on his bond after paying his liabilities proceed against him by indictment for embezzlement, and afterwards an agreement is entered into between the sureties who paid off said liability and the father of said sheriff, who was also one of his sureties, that, if he will pay them a certain sum of money, said criminal proceedings shall be stopped, and said father be released from further liability to his co-sureties,—if such agreement is so far executed that the money is paid, and the *pro rata* share of said father on the liability of said surety is paid, and accepted by said co-sureties, in a chancery suit brought by said co-sureties against said father to make him contribute

further, under the circumstances of the case, equity will leave the parties where it finds them, and the plaintiff's bill will be dismisssed. (p. 11.)

Appeal from Circuit Court, Brooke County.

Action by S. George and others against J. E. Curtis and others. From a judgment for plaintiffs, defendants appeal.

*Reversed.*

HUBBARD & HUBBARD, for appellants.

PALMER & PALMER, for appellees.

ENGLISH, JUDGE:

In November, 1888, Joseph L. Curtis was elected sheriff of Brooke County, and on December 20, 1888, he qualified and gave bond as such sheriff before the county court of said county. As required by law, he gave two bonds,—one in the penal sum of thirty thousand dollars, conditioned as required to faithfully discharge the duties of his office, and to account for and pay over all the money coming to his hands by virtue of his office; and the second of said bonds was in the penal sum of fifteen thousand dollars, conditioned as required to account for all money coming to his hands by virtue of said office in receiving, disbursing, and collecting all school money collected by him as sheriff. On both of said bonds John Gibson, Robert Scott, D. Brown, S. George, L. C. Applegate, Henry Zilliken, Lucas Walter, W. P. Cowans, W. A. Rodgers, F. C. Glass, Walter Cowans, and J. E. Curtis were sureties. In conducting said business of sheriff, said Joseph L. Curtis committed a default, and the county court of Brooke county, in the name of this State, brought suit against him and his securities on the first bond, and obtained judgment against the defendants for the sum of twenty-six thousand two hundred and fifty dollars and seventy-four cents, with interest from November 9, 1893, and costs amounting to one hundred and nine dollars and thirty-three cents. A suit in equity was brought in the circuit court of said county by S. George, W. P. Cowans, John Gibson, Robert Scott, Lucas Walters, and L. C.

Applegate against J. E. Curtis and others.    The plain-
tiffs, among other things, allege that, before said judg-
ment was obtained, said Joseph Curtis made a general as-
signment for the benefit of his creditors to S. George, and
that, after said judgment was obtained, it was part paid
out of the property in the hands of the assignee, and that
all of the money in the hands of assignee was exhausted
in payments made on said judgment, and the balance,
amounting with interest and costs to twenty-one thousand,
seven hundred and forty-seven dollars and eighty-four
cents was paid by complainants as follows: eleven thousand
dollars January 9, 1894, and ten thousand seven hundred
and forty-seven dollars and eighty-four cents, May 31,
1894; the sum of three thousand one hundred and six dol-
lars and eighty-three cents having been paid by each
of the complainants. The plaintiffs further allege
that the said Henry Zilliken, W. A. Rodgers, and
J. E. Curtis were each sureties on Curtis' official bonds,
and were liable with plaintiffs to pay the amount due
thereon, but had paid no part of the liability, and should
contribute their *pro rata* share on said judgment.   They
further allege that on April 26, 1880, John Erwin and wife
conveyed by deed to J. E. Curtis a fraction of a lot of land
in Wellsburg, Brooke County, W. Va., designated in said
deed as a fraction of a lot opposite lot No. 14, which lot is
still owned by J. E. Curtis; that on December 5, 1884, said
Curtis executed a deed of trust to defendant J. L. Curtis,
by which he conveyed said fraction of land in trust to se-
cure the payment of a note of one thousand dollars and in-
terest thereon to John Erwin now dead; and they charge
that the large part of said note has been paid, and they
pray that the administrators of said Erwin may answer
and discover the amount now unpaid on the note secured
by said trust deed.

Plaintiffs also allege that, during the entire term of said
Curtis as sheriff of said county, said J. E. Curtis was his
deputy, had charge of the books, made most of the collec-
tions, and handled most of the money that passed through
the office, and was in every way familiar with the business
of the office; that said J. E. Curtis is the father of said
Joseph L. Curtis, and, by reason of his acquaintance with

the office affairs, he knew that said Joseph L. Curtis was
largely behind in his accounts, and would be unable to
meet the amounts due the county court, and to the other
persons and corporations for which, as sheriff, he col-
lected taxes; and taking advantage of the knowledge ac-
quired as such deputy, said J. E. Curtis, as far as he
could do so, disposed of his property, and conveyed it to
other persons, with the fraudulent intent to escape all lia-
bility for the default and indebtedness of said Joseph L.
Curtis, and to defraud the plaintiffs, who were jointly
liable with him on said official bonds; that said Joseph L.
and J. E. Curtis were joint owners of a printing office,
presses, etc., known as the "Pan-Handle News," worth
two thousand five hundred dollars, and, after they had
discovered said Joseph L. would be unable to meet his lia-
bilities to the county court and others, they conveyed all
of the printing machinery, etc., to the defendant David H.
Hahn, son-in law to said J. E. Curtis, for the purpose of de-
frauding and delaying the complainants and other cred-
itors in the collection of their claims; that on September 5,
1893, J. E. Curtis was the owner of a lot of land in the
town of Bethany, Brooke County, known on the plat of said
town as "No. 30," and on that day he and his wife con-
veyed said lot to David H. Hahn, and the same day Hahn
conveyed it to Sarah B. Curtis, wife of said J. E. Curtis,
conveyances voluntary and without consideration, and
made with intent to defraud creditors, particularly the
plaintiffs; that said J. E. Curtis was then largely indebted,
and his liability on said official bond then existed; and,
with like intent, he sold land in Wellsburg, and purchased
other land in Lazierville, W. Va., from one John McClure,
paid for it and deeded the same to his wife, so it might not
be liable for his debts; also, that J. E. Curtis was on June
5, 1894, the owner of certain judgments obtained by him
in the circuit court, - one dated October, 1890, for one
thousand one hundred and ten dollars and eighty-four
cents, with interest, etc., another for one hundred and
ninety-five dollars and twenty cents, same date with in-
terest, and another same date, for eight hundred and sev-
enty-one dollars and ninety-eight cents, interest, etc.,—
and with like intent J. E. Curtis assigned said judgments

to W. K. Curtis, another of his sons; that said J. E. Curtis is the owner in fee of two-thirds of lot 13 in town of Bethany, one-fourth of lot 65 and lot 18 in said town; that said J. E. Curtis is the owner of real estate outside of this State; that he owns a large amount of real estate, notes, bills, and other assets, the amount of which is unknown to plaintiffs: and they ask that J. E. Curtis be required to make full discovery of all his property, where located, the nature and value thereof. Plaintiffs also allege that Henry Zilliken is the owner of a certain lot of land in Wellsburg, described as the fraction of a lot opposite lot No. 20, which was conveyed to him by J. C. Palmer, special commissioner, April 7, 1886, and on April 7th, same year, Zilliken conveyed said lot to J. C. Palmer, in trust to secure to S. George the payment of two several notes, each for seven hundred and forty-three dollars and twelve cents, and another note for twenty-five dollars; and on April 28, 1883, said Zilliken conveyed or attempted to convey said fraction of lot to Edward O. Hunter, in trust to secure to James Hunter the payment of a note for one thousand dollars and interest; that though said last-named deed was executed on April 28, 1883 it was not admitted to record until June 20, 1886; that on March 18, 1893 Zilliken and wife conveyed said fraction of lot in Wellsburg to A. H. Moeser, and, as part of same deed, conveyed to said Moeser all of his stock of goods, jewelry, furniture, etc., being all the property owned by said Zilliken, to secure the payment of a note to William F. Hofman for one thousand six hundred and ninety-four dollars and seventy-two cents and interest, and also a note of Heeren Bros. for six hundred dollars and interest; that said deed of April 28, 1883, to Edward O. Hunter was given to secure a debt long since paid; that said deed of March 18, 1893, conveyed all of Zilliken's property, both real and personal and that, at the time of giving the same, he was insolvent, and the deed was made with the purpose of covering up his property, so the same could not be made liable for his debts, and to hinder, delay, and defraud his creditors; that said debts are not *bona fide* and, even if they were, he attempted to give a preference to his creditors; and that said goods, jewelry, etc., conveyed to Moeser, were not

taken by him, but remained in possession of Zilliken, who continued to sell same, and appropriate the proceeds, and thus to hinder, delay, and defraud his creditors. Plaintiffs further say that said W. A. Rodgers, is possessed of a large amount of property, consisting of notes and bills due said Rodgers; but they cannot say where said property is, and they ask that Rodgers be compelled to discover and make known all of the property he holds, or which is held for him by others. Plaintiffs further say that S. George obtained a judgment against J. E. Curtis on May 31, 1894, for one hundred and ninety-three dollars and ten cents, which was docketed on the lien docket of said county June 4, 1894; wherefore the plaintiffs say that said deeds of trust made by Zilliken to Edward O. Hunter and A. H. Moeser are fraudulent and void as against the plaintiffs' claims, and should be set aside, and the property therein conveyed subjected to plaintiffs' claims; that the several deeds and transfers made by said J. E. Curtis to his wife, or taken in her name, and to his son-in-law Hahn, and to others, which are charged to be fraudulent, should be set aside and annulled, and the property subjected to the claims of plaintiffs.

The defendants J. E. Curtis and Henry Zilliken filed their separate answers to the amended bill, as did also William Rodgers; and Otto Heeren and William F. Hofman, partners of the firm of Heeren Bros., and William Hofman in his own right, filed their joint answer to said amended bill; and Hannah M. Hunter, administratrix of James Hunter, also filed an answer to the amended bill,—which answers put in issue the material allegations as to said defendants, and were replied to generally by the plaintiffs. Sarah B. Curtis also filed her answer to plaintiffs' bill, adopting the answer of J. E. Curtis. Depositions were taken by both plaintiffs and defendants, and the cause finally heard on March 21, 1896, and a decree rendered therein holding that J. E. Curtis, William A. Rodgers, and Henry Zilliken are liable to the plaintiffs for their *pro rata* share of the amount paid by the plaintiffs on the judgment obtained in the name of the State of West Virginia, for the use of the county court of Brooke County, against said sureties in said sheriff's bond, rendered No-

vember 9, 1893, for the sum of twenty six thousand two hundred any fifty dollars and seventy-four cents and interest from said day. And the court being of opinion that the sale and transfer of the printing office, presses, etc., known as the "Pan-Handle News," located at Wellsburg, W. Va., by Joseph L. Curtis and J. E. Curtis, was fraudulent, and made with intent to defraud creditors; that said conveyances made by J. E. Curtis and Sarah B. Curtis to D. H. Hahn, and by said Hahn to Sarah B. Curtis, of said lot No. 30, in the town of Bethany, were fraudulent, and made with intent to delay, hinder, and defraud creditors; that the property conveyed by John McClure and wife to Sarah B. Curtis, so far as the same was paid for, was paid out of the funds of J. E. Curtis; and that the land so conveyed is subject to the claims of the plaintiffs in this suit; and that the transfer of the judgments hereinbefore set out as owned by J. E. Curtis, and transferred to W. K. Curtis, was made to defraud the creditors of J. E. Curtis,—proceeded to decree in favor of the plaintiffs against J. E. Curtis for two thousand seven hundred and eighteen dollars and forty-eight cents, with interest from May 31, 1894, which should be reduced one-eighth of all received by or on account of plaintiffs from the defendants Zilliken and William A. Rodgers or either; and it was further decreed that plaintiffs do recover of defendant Zilliken the sum of two thousand seven hundred and eighteen dollars and forty-eight cents, with interest thereon from May 31, 1894, which sum should be reduced one-eighth of all received by or on account of the plaintiffs from defendants J. E. Curtis and William A. Rodgers, and that plaintiffs do recover of William A. Rodgers the sum of two thousand seven hundred and eighteen dollars and forty-eight cents, with interest from May 31, 1894, which should be reduced one-eighth of all received by plaintiffs from the defendants J. E. Curtis and Henry Zilliken, or either of them; and it was further decreed that the property before described as the Pan-Handle News property, the several judgments of J. E. Curtis against Albert Lynn and James P. Rodgers, the said lot No. 30 in Bethany, and the tract of land in Lazierville conveyed to Sarah B. Curtis by John McClure and wife, be subjected and made liable to

claim of the plaintiffs for the amount recovered against J. E. Curtis in this decree; that the several deeds of trust made by Zilliken and wife on April 28, 1883, to Edward O. Hunter, and on March 18, 1893, to A. H. Moeser, trustee, are valid and subsisting liens on the property therein set forth. And said cause was referred to a commissioner, to ascertain and report (1) the value of the real estate set out in the bill belonging to J. E. Curtis, the value of the land in Lazierville conveyed to Sarah B. Curtis by McClure and wife, also the value of the lot in Wellsburg belonging to said Ziliken; (2) what is the rental value of the above-mentioned real estate; (3) what liens are against said real estate, and the amount and priorities of said liens. The court further decreed that, unless defendant paid the amount decreed against him within 30 days from the rising of the court, certain special commissioners therein named should take possession of the printing office, types, etc., used in the Pan-Handle office, and all other property constituting said office, and sell the same as therein directed; and from this decree J. E. Curtis, Sarah B. Curtis, and David H. Hahn obtained this appeal.

The first error relied on by the appellants is claimed to be in the action of the court holding that J. E. Curtis was liable to plaintiffs in any sum whatever on account of the judgment rendered against said plaintiffs by the circuit court of Brooke County, mentioned and described in the decree complained of and the proceeeings in the cause. Now, as we have seen, the object of this suit was to compel the defendant J. E. Curtis, to contribute his *pro rata* proportion of twenty-one thousand seven hundred and forty-seven dollars and eighty-four cents, with interest and costs, for which judgment was rendered against plaintiffs, and which is claimed to have been paid by them, and to set aside certain transfers and conveyances made by said J. E. Curtis of his property as void. It appears from the record he was charged with embezzlement, and four indictments were found against him for that offense, in connection with the conduct of the office of sheriff, and that the sureties on his official bond, part of whom are plaintiffs in this cause, were pressing the prosecution of these indictments; that J. E. Curtis, father of J. L. Curtis, sher-

iff, etc., was one of the sureties on his bond, and entered. into an agreement with plaintiffs, as he claims, to turn over to J. C. Palmer, one of the attorneys for plaintiffs, certain property, in consideration that the prosecutions against his son J. L. Curtis should be stopped, and he be released from further liability upon the official bonds of said J. L. Curtis, In pursuance of this agreement, it appears that said J. E. Curtis did turn over to said J. C. Palmer property valued in the aggregate at five thousand two hundred and thirty-four dollars and ninety-seven cents, and, in pursuance of the agreement, the indictments were submitted to a jury. The attorney for the State stated, in presence of court and jury, that the evidence was insufficient to justfy a conviction of the defendant. No evidence was produced in either of the cases, and a verdict of not guilty rendered in each case. When this property was delivered by J. E. Curtis to Palmer, he receipted for the same, and stated in the receipt that he was to deliver it to John Gibson when the agreement made by S. George and others was complied with, and, if the agreement failed, he was to return it to J. E. Curtis. J. C. Palmer, in his deposition, says he distinctly announced before all of them, in order there might be no misunderstanding between J. E. Curtis and his co-sureties as to what the force of this agreement was, that these securities turned over to him by J. E. Curtis to be given to said Gibson were for the express purpose and in consideration of the settlement of the criminal proceedings against J. L. Curtis, and that it would not relieve J. E. Curtis from the payment of any part of his liability as bondsman of said Curtis, late sheriff. The property turned over by J. E. Curtis to J. C. Palmer, as aforesaid, after the disposal of said criminal proceedings appears to have been handed over to said Gibson, who testifies that he gave two thousand seven hundred and ten dollars, part of the proceeds, to Mr. George, to settle the claim of the county against the sureties of said sheriff about June 1, 1894. There seems to be some conflict in the testimony as to whether this property, amounting to five thousand two hundred and thirty-four dollars and ninety-seven cents received from J. E. Curtis by J. C. Palmer, was to be entirely consumed

in satisfaction of the infraction of the criminal laws, or that it should go further, and relieve said J. E. Curtis from paying his *pro rata* share as one of the sureties of J. L. Curtis. What became of the residue of the property that went into the hands of John Gibson does not appear; but without reference to this property, amounting to over five thousand dollars turned over to Palmer, two thousand seven hundred and ten dollars of which appears to have been paid to S. George, to use in settlement of the claim of the county against the sureties of said sheriff, the court was asked by the amended bill filed in this cause to decree against J. E. Curtis his proportionate share of twenty-one thousand seven hundred and forty-seven dollars and forty-eight cents, interest thereon and costs; and, in pursuance of the prayer of said bill, a decree was rendered against said Curtis for two thousand seven hundred and eighteen dollars and forty-eight cents, with interest thereon from May 31, 1894, which should be reduced one-eighth of all received by the plaintiffs from the defendants Zilliken and Rodgers.

Could the plaintiffs in this case enforce such an agreement as the witness Palmer states was made between them and the defendant J. E. Curtis, to wit, that said defendant should pay them upward of five thousand dollars to have these criminal proceedings against his son stopped, and when they had complied with their part of the agreement by procuring the dismissal of said proceedings, claim and hold the money? Such a contract would seem to be void, on the ground of public policy. Parson on Contracts (8th Ed., vol. 1, p. 440) thus states the law: "A promise to pay money in consideration that the promisee would abandon proceedings in which the public are interested is not sustainable, because such consideration is void on grounds of public policy." Now, when we recur to the fact that John Gibson, to whom was turned over this property of more than five thousand dollars by J. E. Curtis, states that he gave two thousand seven hundred and ten dollars of the amount realized from the notes turned over to him by said Curtis (on which he realized two thousand eight hundred dollars) to Mr. George, to use to settle the claim for the county against the sureties, even if we apply

the maxim, "*In pari delicto polior est conditio defendentis*," we find the agreement, as it was understood by J. E. Curtis, by Arnett, by J. B. Somerville, has been so far executed that the *pro rata* share of J. E. Curtis on his liability as one of the sureties of J. L. Curtis has been paid by John Gibson, or as near as it could have probably been ascertained at the time it was paid; the amount thus paid being two thousand seven hundred and ten dollars, and the amount decreed against J. E. Curtis being two thousand seven hundred and eighteen dollars and forty-eight cents, with interest from the 31st of May, 1894, which last-named sum was to be slightly reduced. So that, if equity leaves the parties where it finds them, this agreement has been carried out as understood by the defendant. As is proven by the weight of evidence, the plaintiffs have already received all they claimed to be entitled to, and cannot recover it a second time. Having reached this conclusion, it is unnecessary to pass upon the other questions raised by the assignments of error as to the *bona fides* of the transactions therein mentioned. The decree complained of is for these reasons reversed, and the plaintiffs' bill dismissed as to the appellants.

*Reversed.*